VIVEK JAYARAM (Pro Hac Vice)
PALAK V. PATEL (Pro Hac Vice)
vivek@jayaramlaw.com
palak@jayaramlaw.com
JAYARAM LAW
54 W. 21st Street
New York, NY 10010
Telephone: 312.212.8676

ALEXANDER M. KARGHER (SBN 259262)
akargher@sinclairbraun.com
SINCLAIR BRAUN KARGHER LLP
15260 Ventura Blvd., Suite 715
Sherman Oaks, CA 91403
Telephone: 213.429.6100

*Attorneys for Plaintiff*
GREETINGS TOUR INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GREETINGS TOUR INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation; SEATTLE UNION STREET ASSOCIATES LLP, a Washington limited partnership; HMC HOTEL PROPERTIES II LP, a Delaware limited partnership; RLJ LODGING TRUST, a Maryland corporation; TURNBERRY HOTEL GROUP OF ORLANDO, LTD., a Florida limited liability company; CW HOTEL LP, a | Case No.: 2:21-cv-09336-FLA-PDX<br><br>**FOURTH AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

California limited partnership; AB TCP BIG EASY HOTEL LLC, a Delaware limited liability company; LODGING DYNAMICS HOSPITALITY GROUP, a Utah corporation; 127 PS FEE OWNER LLC, a Delaware limited liability company; and DOES 1-10.

Defendants.

Plaintiff Greetings Tour Inc. brings this action against Defendants Marriott International, Inc., Seattle Union Street Associates LLP, HMC Hotel Properties II LP, RLJ Lodging Trust, Turnberry Hotel Group of Orlando, Ltd., CW Hotel LP, LLC, AB TCP Big Easy Hotel LLC, Lodging Dynamics Hospitality Group, and 127 PS Fee Owner LLC, (collectively referred to as "Defendants"), and Does 1-10 as follows.

## THE PARTIES

1.     Plaintiff Greetings Tour Inc. ("Greetings Tour") is a California corporation. Greetings Tour is owner of all right, title, and interest in the copyrights mentioned in this Complaint.

2.     Defendant Marriott International, Inc. ("Marriott International") is a Delaware corporation based in Bethesda, Maryland. On information and belief, Marriott International owns the Marriott, JW Marriott, Sheraton, Fairfield Inn & Suites, W Hotels, Westin Hotels, Autograph Collection, and Ritz-Carlton hotel brands, among others.

3.     Defendant Seattle Union Street Associates LLP ("Seattle Union") is a Washington company. On information and belief, Seattle Union is an owner, operator, and/or manager of the Sheraton Grand Seattle hotel, which is located at 1400 6th Ave., Seattle, WA 98101 (the "Sheraton Grand Seattle").

4.     Defendant HMC Hotel Properties II Limited Partnership ("HMC") is a Delaware company. On information and belief, HMC is an owner, operator,

and/or manager of the New Orleans Marriott hotel, which is located at 555 Canal St., New Orleans, LA 70130 (the "New Orleans Marriott").

5.     Defendant RLJ Lodging Trust (RLJ Lodging") is a Maryland company. On information and belief, RLJ Lodging is an owner, operator, and/or manager of the Louisville Marriott Downtown hotel, which is located at 280 W Jefferson St., Louisville, KY 40202 (the "Louisville Marriott Downtown").

6.     Defendant Turnberry Hotel Group of Orlando, Ltd. ("Turnberry") is a Florida company. On information and belief, Turnberry is an owner, operator, and/or manager of the Courtyard by Marriott Orlando Downtown hotel, which is located at 730 N Magnolia Ave., Orlando, FL 32803 (the "Courtyard by Marriott Orlando Downtown").

7.     On information and belief, Defendant CW Hotel LP ("CW Hotel") is a California company. On information and belief, CW Hotel is an owner, operator, and/or manager of the Le Merigot Santa Monica hotel, which is located at 1740 Ocean Ave., Santa Monica, CA 90401 (the "Le Merigot Santa Monica").

8.     Defendant AB TCP Big Easy Hotel LLC ("AB TCP Big Easy") is a Delaware company. On information and belief, AB TCP Big Easy is an owner, operator, and/or manager of the New Orleans Marriott Warehouse Arts District hotel, which is located at 859 Convention Center Blvd., New Orleans, LA 70130 (the "New Orleans Marriott Warehouse").

9.     Defendant Lodging Dynamics Hospitality Group ("Lodging Dynamics") is a Utah company. On information and belief, Lodging Dynamics is an owner, operator, and/or manager of the Fairfield Inn & Suites Moab hotel, which is located at 1863 N. Hwy. 191, Moab, UT 84532 (the "Fairfield Inn & Suites Moab").

10.     127 PS Fee Owner LLC ("127 PS Fee Owner") is a Delaware company. On information and belief, 127 PS Fee Owner is an owner, operator,

and/or manager of the Cleveland Marriott Downtown at Key Tower hotel, which is located at 1360 W. Mall Dr., Cleveland, OH 44114 (the "Cleveland Marriott Downtown").

11.     Greetings Tour is ignorant of the true names and capacities of the Defendants sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictious names. Greetings Tour will amend this Complaint to allege the true names and capacities when the same has been ascertained. Greetings Tour is informed and believes, and thereon alleges, that each fictitiously-named Defendant is responsible in some manner for the occurrences herein alleged, and that Greetings Tour's damages as herein alleged were proximately caused by their conduct.

12.     Each of the Defendants other than Marriott International acted as an agent of Marriott International, which ratified and otherwise adopted the acts and statements performed, made, or carried out by the other Defendants so as to make Marriott International directly, contributorily, and vicariously liable to Greetings Tour for the other Defendants' acts of copyright infringement alleged herein.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Section 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition.

14.     Defendants are subject to the personal jurisdiction of the Court because (1) their alleged misconduct at issue in this case was purposefully directed at and/or resulted in transactions with California residents, or they otherwise have performed some act by which they purposely availed themselves of the privilege

of conducting activities in California; and (2) Greetings Tour's claims arise out of or relate to such misconduct or other acts.

15. Defendant Marriott International is also subject to the personal jurisdiction of this Court because it regularly franchises Marriott Branded Hotels in California and regularly transacts business in California.

16. Defendant HMC is also subject to the personal jurisdiction of this Court because it maintains an office in California. On information and belief, HMC does business in California at this address.

17. Defendant RLJ Lodging is also subject to the personal jurisdiction of this Court because it transacts business and operates several hotel properties in California.

18. Defendant CW Hotel is also subject to the personal jurisdiction of this Court because it is a California company with a place of business in the state.

19. Defendant Lodging Dynamics is also subject to the personal jurisdiction of this Court because it transacts business and operates several hotel properties in California.

20. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1)-(3) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### A. Greetings Tour's Background and Growing Acclaim

21. Greetings Tour's principals, Victor "Ving" Fung and Lisa Beggs, are acclaimed visual artists, specializing in painting murals.

22. Fung grew up with a passion for art. As a New York native, Fung had a special interest in graffiti art. Fung would use his free time to paint throughout his childhood and into adulthood. In or about 2013, Fung decided to quit his job and pursue art full-time.

23658394.1
229770-10016

23. Fung also grew up collecting postcards, and his signature work was inspired by the large letter postcards popular in the mid-20th century. Fung desired to create a modern take on the postcard concept by painting interactive murals in local communities primarily using spray paint.

24. Greetings Tour began with a mural in Chinatown, New York City, New York. Fung desired to create a positive piece that captured the spirit of the local community. Greetings Tour felt that a post-card style mural was perfect since it included both lettering and relatable imagery. This mural quickly garnered acclaim and became a point of pride for the local community that was highlighted in the mural. Seeing the joy this work brought to every resident and tourist visiting Chinatown, Fung was inspired to create Greetings Tour.

25. In or about 2015, Greetings Tour decided to expand its work to encompass neighborhoods all across the United States. Fung and Beggs left New York in a small RV to develop their art all across the country. In so doing, Greetings Tour began its nationwide postcard mural project.

26. Greetings Tour made it its mission to paint a postcard mural in every state. Each mural created by Greetings Tour is hand-painted by Fung and Beggs in their signature colorful postcard style. Greetings Tour carefully plans and designs each mural to portray its take on the community in which the mural is located. Greetings Tour creatively incorporates local landmarks, history, and culture with a modern twist and from Greetings Tour's unique perspective.

27. Importantly, each mural created by Greetings Tour is affixed with its name, most often on the bottom right corner of the mural.

28. Each of these murals quickly became a focal point in its respective community. Both locals and tourists flock to these murals. Greetings Tour's work is often featured on travel blogs and social media as a "must-see" for anyone in that respective city. There are often crowds and even lines of people around the mural

seeking the perfect social media photo to capture their visit to that city. Greetings Tour's work distinctively reflects the spirit of the cities where the murals reside and has become synonymous with public engagement.

29. Greetings Tour's work has gained further distinction in media and news. Greetings Tour and its work have been featured in popular publications and news sources such as Vogue, Conde Nast Traveler, InStyle Magazine, Elle Décor, Hypebeast, Time Out Chicago, Travel Channel, NBC, CBS, and Fox.[1]

30. In its early days, Greetings Tour worked hard to identify appropriate locations for its work and gain property owners' permission. Due to the popularity of Greetings Tour's early murals, local communities would see increased foot traffic, which helped boost the profile of many local businesses around the murals. As such, in recent years, many businesses have requested more murals and have engaged Greetings Tours to affix its signature murals to their properties.

31. To date, Greetings Tour has created over sixty (60) unique murals in over twenty-five (25) states. Greetings Tour documents its murals and its travels on its website: https://www.greetingstour.com/.

32. Greetings Tour continues its mission to paint a mural in each state across America. Ultimately, Greetings Tour plans to turn its murals into a publication that shows each of the works as a series of linen postcards.

33. For each of its murals, Greetings Tour explicitly retains all rights to its intellectual property, including all copyrights to the mural and the Greetings Tour trademark, which is prominently displayed on every work.

---

[1] *See*, *e.g.*, https://www.cntraveler.com/galleries/2016-06-14/meet-the-graffiti-artists-painting-their-way-across-america; https://www.travelchannel.com/interests/road-trips/articles/greetings-tour-road-trip-mural-project; https://www.cbsnews.com/chicago/news/new-logan-square-mural-sends-greetings-from-chicago/; https://kfoxtv.com/news/local/greetings-from-el-paso-mural-goes-on-view-in-new-upper-valley-shopping-center; and, https://elpasoheraldpost.com/el-paso-greetings-from-mural/.

23658394.1
229770-10016

34. While Greetings Tour encourages the public to engage with and enjoy its artwork, it expects, and explicitly requests on its website (https://www.greetingstour.com/licensing-rates), that all brands and companies that desire to use its artwork obtain proper permission and clearance. Greetings Tour is extremely selective about which brands and companies it works with and only licenses its work to businesses that align with its values.

35. Greetings Tour has collaborated with major brands such as Abercrombie & Fitch, Lululemon, Bloomingdale's, NBC Universal, and Nike. Further, given the nature of Greetings Tour's work, it has frequently worked with businesses in the travel industry, including Airbnb and various luxury hotels.

36. Greetings Tour uses its licensing fees towards supporting its Community Mural Grant. Local communities can apply for the grant in order to have Greetings Tour come to their cities to paint a mural. As a result of Greetings Tour's works, neighborhoods will experience an increase in tourism and an influx to nearby small businesses, which allows for improvement of the communities' infrastructure.

**B. Greetings Tour's Relevant Work**

37. In 2015, Fung and Beggs created a mural in Seattle, Washington, a photograph of which is attached in Exhibit A to this Complaint. This mural is registered with the United States Copyright Office, as reflected by Reg. No. V Au 1-257-759.

38. In 2016, Fung and Beggs created a mural in New Orleans, Louisiana, a photograph of which is attached in Exhibit A to this Complaint. This mural is registered with the United States Copyright Office, as reflected by Reg. No. V Au-1-360-170.

39. In 2018, Fung and Beggs created a mural in Louisville, Kentucky, a photograph of which is attached in Exhibit A to this Complaint. This mural is

registered with the United States Copyright Office, as reflected by Reg. No. V Au-1-359-924.

40.    In 2016, Fung and Beggs created a mural in Orlando, Florida, a photograph of which is attached in Exhibit A to this Complaint. This mural is registered with the United States Copyright Office, as reflected by Reg. No. 1-257-752.

41.    In 2017, Fung and Beggs created a mural in Tucson, Arizona, a photograph of which is attached in Exhibit A to this Complaint. This mural is registered with the United States Copyright Office, as reflected by Reg. No. Vau001307692.

42.    In 2019, Fung and Beggs created a mural in Santa Monica, California, a photograph of which is attached in Exhibit A to this Complaint. This mural is registered with the United States Copyright Office, as reflected by Reg. No. Vau001360168.

43.    In 2019, Fung and Beggs created a mural in Moab, Utah, a photograph of which is attached in Exhibit A to this Complaint. This mural is registered with the United States Copyright Office, as reflected by Reg. No. Vau001368905.

44.    In 2015, Fung and Beggs created a mural in Cleveland, Ohio, a photograph of which is attached in Exhibit A to this Complaint. This mural is registered with the United States Copyright Office, as reflected by Reg. No. V Au 1-257-759.

45.    Collectively, these works will hereinafter be refered to as the "Murals."

46.    Greetings Tour signed the Murals by including the name of its Instagram account "@greetingstour" therein. By all accounts, the Murals have been extremely well received by the communities that host them.

## C. Defendants' Unauthorized Use of Greetings Tour's Work

47.     Marriott International is one of the largest hotel chains in the world. In addition to its eponymous brand Marriott, it owns well-known hotel brands like JW Marriott, Sheraton, Fairfield Inn & Suites, W Hotels, Westin Hotels, Autograph Collection, and Ritz-Carlton (the "Marriott Brands").

48.     On information and belief, Marriott International franchises the Marriott Brands to other entities, including the other named Defendants in this action (the "Marriott Associated Entities"), which are in turn allowed to own, operate, and/or manage hotels under the Marriott Brands.

49.     Beginning in at least 2017, Marriott International and the Marriott Associated Entities began prominently reproducing photographs of the Murals on social media accounts, including Twitter, Facebook, and Instagram, all of which are based in California.[2] Examples of these uses are attached in Exhibit A to this Complaint (the "Infringing Works").

### 1. Defendant Seattle Union

50.     On information and belief, Seattle Union has owned, operated, and/or managed the Sheraton Grand Seattle since at least 2018.

51.     On information and belief, Marriott International is the parent company of Seattle Union.

52.     On information and belief, Marriott International has franchised the "Sheraton" brand to Seattle Union, which in turn has been allowed to own, operate, and/or manage the Sheraton Grand Seattle.

53.     On information and belief, Seattle Union has used social media to advertise the hospitality services provided by Seattle Union.

---

[2] Twitter is owned and operated by X Corp., which is based in San Francisco, California. Facebook and Instagram are owned and operated by Meta Platforms, Inc., which is based in Menlo Park, California.

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT

54.     On information and belief, Seattle Union has owned, operated, and/or managed a profile on Instagram for the Sheraton Grand Seattle with the handle "@SheratonGrandSeattle."

55.     Further, on information and belief, Seattle Union has owned, operated, and/or managed a profile on Twitter for the Sheraton Grand Seattle with the handle "@SheratonSeattle."

56.     The Sheraton Grand Seattle's Instagram and Twitter profiles have been accessible on the internet to consumers, including California residents. Besides viewing posts on these profiles, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the Sheraton Grand Seattle's Instagram and Twitter profiles, consumers have also been able to access the Sheraton Grand Seattle's website—a platform for reserving accommodations, dining, events, and other services at Sheraton Grand Seattle—as well as Marriott International's website.

57.     Seattle Union posts advertisements for the Sheraton Grand Seattle on the Sheraton Grand Seattle's Instagram and Twitter profiles to solicit consumers, including on information and belief California residents, to purchase hospitality services from the Sheraton Grand Seattle. On information and belief, the Sheraton Grand Seattle's Instagram and Twitter profiles have a California user base from which Seattle Union seeks to or does profit by selling such hospitality services.

58.     On July 31, 2018, Seattle Union made the following post on the Sheraton Grand Seattle's Instagram profile:



59. On July 31, 2018, Seattle Union made the following tweet on the Sheraton Grand Seattle's Twitter feed:



60. The foregoing Instagram and Twitter posts by Seattle Union will hereinafter be referred to as the "Infringing Seattle Union Posts."

61. Greetings Tour did not learn of the Infringing Seattle Union Posts until approximately 2020. Further, Greetings Tour had no reasonable way of discovering the Infringing Seattle Union Posts at the time they were posted, as Seattle Union

did not "tag" or otherwise alert Greetings Tour to the Infringing Seattle Union Posts at the time that they were made, and Greetings Tour did not follow the Sheraton Grand Seattle's social media profiles.

62.    The Infringing Seattle Union Posts prominently display Greetings Tour's "Greetings from Seattle" mural (Reg. No. V Au 1-257-759):



63.    Greetings Tour's prominence and its signature on the "Greetings from Seattle" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, Seattle Union had reason to know that the "Greetings from Seattle" mural was created by Greetings Tour, and Seattle Union had access to Greetings Tour's original artwork and design before Seattle Union commenced its acts of infringement.

64.    Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, Seattle Union was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing Seattle Union Posts.

65.    Yet, the Infringing Seattle Union Posts were made without Greetings Tour's knowledge or permission. Seattle Union failed to credit, mention, or tag Greetings Tour as the creator of the "Greetings from Seattle" mural.

23658394.1
229770-10016

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT

66.     Indeed, the Infringing Seattle Union Posts were purposely cropped to omit the portion that contained Greetings Tour's signature – *i.e.*, the name of Greetings Tour's Instagram account "@greetingstour."

67.     On information and belief, Seattle Union's failure to credit Greetings Tour as the creator of the "Greetings from Seattle" mural, as well as its selective cropping of the mural, were done to conceal its infringement, since including Greetings Tour's signature or crediting Greetings Tour by tagging it in the subject posts would have alerted Greetings Tour to Seattle Union's unauthorized commercial use of the mural.

68.     By leveraging Greetings Tour's work, the Infringing Seattle Union Posts have sought to entice travelers to visit Seattle and stay at or purchase other services from the Sheraton Grand Seattle.

69.     Seattle Union has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for Seattle Union.

70.     Seattle Union has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from Seattle" mural.

71.     By its actions alleged above, Seattle Union has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from Seattle" mural including by, among other things, copying, publicly displaying, and distributing the Infringing Seattle Union Posts, which reproduce the "Greetings from Seattle" mural in order to enhance the Sheraton Grand Seattle's brand image and attract patrons to the hotel.

72.     Greetings Tour has sustained significant injury and monetary damages as a result of Seattle Union's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

73.    Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Seattle Union's acts. In order to determine the full extent of such damages, including such profits of Seattle Union as may be recoverable, Greetings Tour will require an accounting from Seattle Union of all monies generated from its wrongful conduct.

74.    On information and belief, Seattle Union's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

75.    Seattle Union's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

## 2. Defendant HMC

76.    On information and belief, HMC has owned, operated, and/or managed the New Orleans Marriott since at least 2019.

77.    On information and belief, Marriott International has franchised the "Marriott" brand to HMC, which in turn has been allowed to own, operate, and/or manage the New Orleans Marriott.

78.    On information and belief, HMC has used social media to advertise the hospitality services provided by HMC.

79.    On information and belief, HMC has owned, operated, and/or managed a profile on Instagram for the New Orleans Marriott with the handle "@neworleansmarriott."

80.    In addition, on information and belief, HMC has owned, operated, and/or managed a profile on Twitter for the New Orleans Marriott with the handle "@MarriottNola."

81.     Further, on information and belief, HMC has owned, operated, and/or managed a profile on Facebook for the New Orleans Marriott with the username "New Orleans Marriott."

82.     The New Orleans Marriott's Instagram, Twitter, and Facebook profiles have been accessible on the internet to consumers, including California residents. Besides viewing posts on these profiles, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the New Orleans Marriott's Instagram, Twitter, and Facebook profiles, consumers have also been able to access the New Orleans Marriott's website—a platform for reserving accommodations, dining, events, and other services at the New Orleans Marriott—as well as Marriott International's website.

83.     HMC posts advertisements for the New Orleans Marriott on the New Orleans Marriott's Instagram, Twitter, and Facebook profiles to solicit consumers, including on information and belief California residents, to purchase hospitality services from the New Orleans Marriott. On information and belief, the New Orleans Marriott's Instagram, Twitter, and Facebook profiles have a California user base from which HMC seeks to or does profit by selling such hospitality services.

84.     On May 14, 2019, HMC made the following post on the New Orleans Marriott's Instagram profile:

23658394.1
229770-10016



85.    On May 14, 2019, HMC made the following tweet on the New Orleans Marriott's Twitter feed:



86.    On September 24, 2019, HMC made the following post on the New Orleans Marriott's Facebook profile:

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT



87. The foregoing Instagram, Twitter, and Facebook posts by HMC will hereinafter be referred to as the "Infringing HMC Posts."

88. Greetings Tour did not learn of the Infringing HMC Posts until approximately 2021. Further, Greetings Tour had no reasonable way of discovering the Infringing HMC Posts at the time they were posted, as HMC did not "tag" or otherwise alert Greetings Tour to the Infringing HMC Posts at the time that they were made, and Greetings Tour did not follow the New Orleans Marriott's social media profiles.

89. The Infringing HMC Posts prominently display Greetings Tour's "Greetings from NOLA" mural (Reg. No. V Au-1-360-170):

23658394.1
229770-10016



90.     Greetings Tour's prominence and its signature on the "Greetings from NOLA" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, HMC had reason to know that the "Greetings from NOLA" mural was created by Greetings Tour, and HMC had access to Greetings Tour's original artwork and design before HMC commenced its acts of infringement.

91.     Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, HMC was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing HMC Posts.

92.     Yet, the Infringing HMC Posts were made without Greetings Tour's knowledge or permission. HMC failed to credit, mention, or tag Greetings Tour as the creator of the murals.

93.     Indeed, the Infringing HMC Post on Twitter was purposely cropped to omit the portion that contained Greetings Tour's signature – *i.e.*, the name of Greetings Tour's Instagram account "@greetingstour."

94.     On information and belief, HMC's failure to credit Greetings Tour as the creator of the "Greetings from NOLA" mural, as well as its selective cropping of the mural, were done to conceal its infringement, since including Greetings

23658394.1
229770-10016

Tour's signature or crediting Greetings Tour by tagging it in the subject posts would have alerted Greetings Tour to HMC's unauthorized commercial use of the mural.

95.     By leveraging Greetings Tour's work, the Infringing HMC Posts have sought to entice travelers to visit New Orleans and stay at or purchase other services from the New Orleans Marriott.

96.     HMC has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for HMC.

97.     HMC has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from NOLA" mural.

98.     By its actions alleged above, HMC has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from NOLA" mural including by, among other things, copying, publicly displaying, and distributing the Infringing HMC Posts, which reproduce the "Greetings from NOLA" mural in order to enhance the New Orleans Marriott's brand image and attract patrons to the hotel.

99.     Greetings Tour has sustained significant injury and monetary damages as a result of HMC's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

100.    Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of HMC's acts. In order to determine the full extent of such damages, including such profits of HMC as may be recoverable, Greetings Tour will require an accounting from HMC of all monies generated from its wrongful conduct.

101. On information and belief, HMC's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

102. HMC's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 3. Defendant RLJ Lodging

103. On information and belief, RLJ Lodging has owned, operated, and/or managed the Louisville Marriott Downtown since at least 2019.

104. On information and belief, Marriott International has franchised the "Marriott" brand to RLJ Lodging, which in turn has been allowed to own, operate, and/or manage the Louisville Marriott Downtown.

105. On information and belief, RLJ Lodging has used social media to advertise the hospitality services provided by RLJ Lodging.

106. On information and belief, RLJ Lodging has owned, operated, and/or managed a profile on Instagram for the Louisville Marriott Downtown with the handle "@louisvillemarriott."

107. Further, on information and belief, RLJ Lodging has owned, operated, and/or managed a profile on Facebook for the Louisville Marriott Downtown with the name "Louisville Marriott Downtown."

108. The Louisville Marriott Downtown's Instagram and Facebook profiles have been accessible on the internet to consumers, including California residents. Besides viewing posts on these profiles, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the Louisville Marriott Downtown's Instagram and Facebook profiles, consumers have also been able to

23658394.1
229770-10016

access the Louisville Marriott Downtown's website—a platform for reserving accommodations, dining, events, and other services at the Louisville Marriott Downtown—as well as Marriott International's website.

109. RLJ Lodging posts advertisements for the Louisville Marriott Downtown on the Louisville Marriott Downtown's Instagram and Facebook profiles to solicit consumers, including on information and belief California residents, to purchase hospitality services from the Louisville Marriott Downtown. On information and belief, the Louisville Marriott Downtown's Instagram and Facebook profiles have a California user base from which RLJ Lodging seeks to or does profit by selling such hospitality services.

110. On July 11, 2019, RLJ Lodging made the following post on the Louisville Marriott Downtown's Instagram profile:



111. On July 11, 2019, RLJ Lodging posted the following on the Louisville Marriott Downtown's Facebook profile:

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT





**Louisville Marriott Downtown**
July 11, 2019 · 🌐

Stress less and enjoy the best of Louisville 🏙️
|@darlingletsdiscover

❤️ 16                                    2 Shares

112.   The foregoing Instagram and Facebook posts by RLJ Lodging will hereinafter be referred to as the "Infringing RLJ Lodging Posts."

113.   Greetings Tour did not learn of the Infringing RLJ Lodging Posts until approximately 2021. Further, Greetings Tour had no reasonable way of discovering the Infringing RLJ Lodging Posts at the time they were posted, as RLJ Lodging did not "tag" or otherwise alert Greetings Tour to the Infringing RLJ Lodging Posts at the time that they were made, and Greetings Tour did not follow the Louisville Marriott Downtown's social media profiles.

114.   The Infringing RLJ Lodging Posts prominently display Greetings Tour's "Greetings from Louisville" mural (Reg. No. V Au-1-359-924):



115. Greetings Tour's prominence and its signature on the "Greetings from Louisville" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, RLJ Lodging had reason to know that the "Greetings from Louisville" mural was created by Greetings Tour, and RLJ Lodging had access to Greetings Tour's original artwork and design before RLJ Lodging commenced its acts of infringement.

116. Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, RLJ Lodging was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing RLJ Lodging Posts.

117. Yet, the Infringing RLJ Lodging Posts were made without Greetings Tour's knowledge or permission. RLJ Lodging failed to credit, mention, or tag Greetings Tour as the creator of the murals.

118. On information and belief, RLJ Lodging's failure to credit Plaintiff as the creator of the "Greetings from Louisville" mural was done to conceal its infringement, since including Plaintiff's signature or crediting Plaintiff by tagging

23658394.1
229770-10016

it in the subject posts would have alerted Greetings Tour to RLJ Lodging's unauthorized commercial use of the mural.

119.   By leveraging Greetings Tour's work, the Infringing RLJ Lodging Posts have sought to entice travelers to visit Louisville and stay at or purchase other services from the Louisville Marriott Downtown.

120.   RLJ Lodging has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for RLJ Lodging.

121.   RLJ Lodging has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from Louisville" mural.

122.   By its actions alleged above, RLJ Lodging has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from Louisville" mural including by, among other things, copying, publicly displaying, and distributing the Infringing RLJ Lodging Posts, which reproduce the "Greetings from Louisville" mural in order to enhance the Louisville Marriott Downtown's brand image and attract patrons to the hotel.

123.   Greetings Tour has sustained significant injury and monetary damages as a result of RLJ Lodging's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

124.   Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of RLJ Lodging's acts. In order to determine the full extent of such damages, including such profits of RLJ Lodging as may be recoverable, Greetings Tour will require an accounting from RLJ Lodging of all monies generated from its wrongful conduct.

125.   On information and belief, RLJ Lodging's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

126.  RLJ Lodging's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 4. Defendant Turnberry

127.  On information and belief, Turnberry has owned, operated, and/or managed the Courtyard by Marriott Orlando Downtown since at least 2019.

128.  On information and belief, Marriott International has franchised the "Marriott" brand to Turnberry, which in turn has been allowed to own, operate, and/or manage the Courtyard by Marriott Orlando Downtown.

129.  On information and belief, Turnberry has used social media to advertise the hospitality services provided by Turnberry.

130.  On information and belief, Turnberry has owned, operated, and/or managed a profile on Instagram for the Courtyard by Marriott Orlando Downtown with the handle "@cyorlandodowntown."

131.  Further, on information and belief, Turnberry has owned, operated, and/or managed a profile on Facebook for the Courtyard by Marriott Orlando Downtown with the name "Courtyard by Marriott Orlando Downtown."

132.  The Courtyard by Marriott Orlando Downtown's Instagram and Facebook profiles have been accessible on the internet to consumers, including California residents. Besides viewing posts on these profiles, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the Courtyard by Marriott Orlando Downtown's Instagram and Facebook profiles, consumers have also been able to access the Courtyard by Marriott Orlando Downtown's website— a platform for reserving accommodations, dining, events, and other services at the

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT

Courtyard by Marriott Orlando Downtown—as well as Marriott International's website.

133. Turnberry posts advertisements for the Courtyard by Marriott Orlando Downtown on the Courtyard by Marriott Orlando Downtown's Instagram and Facebook profiles to solicit consumers, including on information and belief California residents, to purchase hospitality services from the Courtyard by Marriott Orlando Downtown. On information and belief, the Courtyard by Marriott Orlando Downtown's Instagram and Facebook profiles have a California user base from which Turnberry seeks to or does profit by selling such hospitality services.

134. On July 17, 2019, Turnberry made the following post on the Courtyard by Marriott Orlando Downtown's Instagram profile:



135. On July 17, 2019, Turnberry posted the following on the Courtyard by Marriott Orlando Downtown's Facebook profile:





**Courtyard by Marriott Orlando Downtown**
July 17, 2019 · 🌐

Greetings from Downtown Orlando! Some call it a vacation. We call it home. Grab this ultimate photo opportunity just around the corner from us. 📸

136.   The foregoing Instagram and Facebook posts by Turnberry will hereinafter be referred to as the "Infringing Turnberry Posts."

137.   Greetings Tour did not learn of the Infringing Turnberry Posts until approximately 2021. Further, Greetings Tour had no reasonable way of discovering the Infringing Turnberry Posts at the time they were posted, as Turnberry did not "tag" or otherwise alert Greetings Tour to the Infringing Turnberry Posts at the time that they were made, and Greetings Tour did not follow the Courtyard by Marriott Orlando Downtown's social media profiles.

138.   The Infringing Turnberry Posts prominently display Greetings Tour's "Greetings from Orlando" mural (Reg. No. 1-257-752):



139.   Greetings Tour's prominence and its signature on the "Greetings from Orlando" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, Turnberry had reason to know that the "Greetings from Orlando" mural was created by Greetings Tour, and Turnberry had access to Greetings Tour's original artwork and design before Turnberry commenced its acts of infringement.

140.   Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, Turnberry was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing Turnberry Posts.

141.   Yet, the Infringing Turnberry Posts were made without Greetings Tour's knowledge or permission. Turnberry failed to credit, mention, or tag Greetings Tour as the creator of the murals.

142.   Indeed, the Infringing Turnberry Posts were purposely cropped to omit the portion that contained Greetings Tour's signature – *i.e.*, the name of Greetings Tour's Instagram account "@greetingstour."

143. On information and belief, Turnberry's failure to credit Greetings Tour as the creator of the "Greetings from Orlando" mural, as well as its selective cropping of the mural, were done to conceal its infringement, since including Greetings Tour's signature or crediting Greetings Tour by tagging it in the subject posts would have alerted Greetings Tour to Turnberry's unauthorized commercial use of the mural.

144. By leveraging Greetings Tour's work, the Infringing Turnberry Posts have sought to entice travelers to visit Orlando and stay at or purchase other services from the Courtyard by Marriott Orlando Downtown.

145. Turnberry has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for Turnberry.

146. Turnberry has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from Orlando" mural.

147. By its actions alleged above, Turnberry has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from Orlando" mural including by, among other things, copying, publicly displaying, and distributing the Infringing Turnberry Posts, which reproduce the "Greetings from Orlando" mural in order to enhance the Courtyard by Marriott Orlando Downtown's brand image and attract patrons to the hotel.

148. Greetings Tour has sustained significant injury and monetary damages as a result of Turnberry's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

149. Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Turnberry's acts. In order to determine the full extent of such damages, including such profits of Turnberry as

23658394.1
229770-10016

may be recoverable, Greetings Tour will require an accounting from Turnberry of all monies generated from its wrongful conduct.

150.    On information and belief, Turnberry's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

151.    Turnberry's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 5.  Defendant CW Hotel

152.    On information and belief, CW Hotel has owned, operated, and/or managed the Le Merigot Santa Monica hotel since at least 2019.

153.    On information and belief, Marriott International has franchised the "JW Marriott" and/or the "Le Merigot" brand to CW Hotel, which in turn has been allowed to own, operate, and/or manage the Le Merigot Santa Monica.

154.    On information and belief, CW Hotel has used social media to advertise the hospitality services provided by CW Hotel.

155.    On information and belief, CW Hotel has owned, operated, and/or managed a profile on Facebook for the Le Merigot Santa Monica with the name "Le Merigot Santa Monica."

156.    The Le Merigot Santa Monica's Facebook profile has been accessible on the internet to consumers, including California residents. Besides viewing posts on this profile, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the Le Merigot Santa Monica's Facebook profile, consumers have also been able to access the Le Merigot Santa Monica's website—a platform

for reserving accommodations, dining, events, and other services at the Le Merigot Santa Monica—as well as Marriott International's website.

157. CW Hotel posts advertisements for the Le Merigot Santa Monica on the Le Merigot Santa Monica's Facebook profile to solicit consumers, including on information and belief California residents, to purchase hospitality services from the Le Merigot Santa Monica. On information and belief, the Le Merigot Santa Monica's Facebook profile has a California user base from which CW Hotel seeks to or does profit by selling such hospitality services.

158. On November 22, 2019, CW Hotel made the following post on the Le Merigot Santa Monica's Facebook profile (the 'Infringing CW Hotel Post"):



159. Greetings Tour did not learn of the Infringing CW Hotel Post until approximately 2023. Further, Greetings Tour had no reasonable way of discovering the Infringing CW Hotel Post at the time it was posted, as CW Hotel did not "tag" or otherwise alert Greetings Tour to the Infringing CW Hotel Post at the time it was made, and Greetings Tour did not follow the Le Merigot Santa Monica's social media profiles.

160.   The CW Hotel Post prominently displays Greetings Tour's "Greetings from Santa Monica" mural (VAu001360168):



161.   Greetings Tour's prominence and its signature on the "Greetings from Santa Monica" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, CW Hotel had reason to know that the "Greetings from Santa Monica" mural was created by Greetings Tour, and CW Hotel had access to Greetings Tour's original artwork and design before CW Hotel commenced its acts of infringement.

162.   Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, CW Hotel was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing CW Hotel Post.

163.   Yet, the Infringing CW Hotel Post was made without Greetings Tour's knowledge or permission. CW Hotel failed to credit, mention, or tag Greetings Tour as the creator of the "Greetings from Santa Monica" mural.

164.   Indeed, the Infringing CW Hotel Post was purposely cropped to omit the portion that contained Greetings Tour's signature – *i.e.*, the name of Greetings Tour's Instagram account "@greetingstour."

23658394.1
229770-10016

165. On information and belief, CW Hotel's failure to credit Greetings Tour as the creator of the "Greetings from Santa Monica" mural, as well as its selective cropping of the mural, were done to conceal its infringement, since including Greetings Tour's signature or crediting Greetings Tour by tagging it in the subject post would have alerted Greetings Tour to CW Hotel's unauthorized commercial use of the mural.

166. By leveraging Greetings Tour's work, the Infringing CW Hotel Post has sought to entice travelers to visit Santa Monica and stay at or purchase other services from the Le Merigot Santa Monica.

167. CW Hotel has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for CW Hotel.

168. CW Hotel has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from Santa Monica" mural.

169. By its actions alleged above, CW Hotel has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from Santa Monica" mural including by, among other things, copying, publicly displaying, and distributing the Infringing CW Hotel Post, which reproduces the "Greetings from Santa Monica" mural in order to enhance the Le Merigot Santa Monica's brand image and attract patrons to the hotel.

170. Greetings Tour has sustained significant injury and monetary damages as a result of CW Hotel's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

171. Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of CW Hotel's acts. In order to determine the full extent of such damages, including such profits of CW Hotel as

23658394.1
229770-10016

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT

may be recoverable, Greetings Tour will require an accounting from CW Hotel of all monies generated from its wrongful conduct.

172. On information and belief, CW Hotel's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

173. CW Hotel's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 6. Defendant AB TCP Big Easy

174. On information and belief, AB TCP Big Easy has owned, operated, and/or managed the New Orleans Marriott Warehouse since at least 2022.

175. On information and belief, Marriott International has franchised the "Marriott" brand to AB TCP Big Easy, which in turn has been allowed to own, operate, and/or manage the New Orleans Marriott Warehouse.

176. On information and belief, AB TCP Big Easy has used social media to advertise the hospitality services provided by AB TCP Big Easy.

177. On information and belief, AB TCP Big Easy has owned, operated, and/or managed a profile on Instagram for the New Orleans Marriott Warehouse with the handle "@nolamarriottarts."

178. The New Orleans Marriott Warehouse's Instagram profile has been accessible on the internet to consumers, including California residents. Besides viewing posts on this profile, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the New Orleans Marriott Warehouse's Instagram profile, consumers have also been able to access the New Orleans Marriott Warehouse's website—a platform for reserving accommodations, dining,

events, and other services at the New Orleans Marriott Warehouse—as well as Marriott International's website.

179. AB TCP Big Easy posts advertisements for the New Orleans Marriott Warehouse on the New Orleans Marriott Warehouse's Instagram profile to solicit consumers, including on information and belief California residents, to purchase hospitality services from the New Orleans Marriott Warehouse. On information and belief, the New Orleans Marriott Warehouse's Instagram profile has a California user base from which AB TCP Big Easy seeks to or does profit by selling such hospitality services.

180. On April 6, 2022, AB TCP Big Easy made the following post on the New Orleans Marriott Warehouse's Instagram profile (the "Infringing AB TCP Big Easy Post"):



181. The Infringing AB TCP Big Easy Post prominently displays Greetings Tour's "Greetings from NOLA" mural (Reg. No. V Au-1-360-170):



182.   Greetings Tour's prominence and its signature on the "Greetings from NOLA" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, AB TCP Big Easy had reason to know that the "Greetings from NOLA" mural was created by Greetings Tour, and AB TCP Big Easy had access to Greetings Tour's original artwork and design before AB TCP Big Easy commenced its acts of infringement.

183.   Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, AB TCP Big Easy was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing AB TCP Big Easy Post.

184.   Yet, the Infringing AB TCP Big Easy Post was made without Greetings Tour's knowledge or permission. AB TCP Big Easy failed to credit, mention, or tag Greetings Tour as the creator of the "Greetings from NOLA" mural.

185.   Indeed, the Infringing AB TCP Big Easy Post was purposely cropped to partially omit the portion that contained Greetings Tour's signature – *i.e.*, the name of Greetings Tour's Instagram account "@greetingstour."

186.   On information and belief, AB TCP Big Easy's failure to credit Greetings Tour as the creator of the "Greetings from NOLA" mural, as well as its

23658394.1
229770-10016

selective cropping of the mural, were done to conceal its infringement, since including Greetings Tour's signature or crediting Greetings Tour by tagging it in the subject post would have alerted Greetings Tour to AB TCP Big Easy's unauthorized commercial use of the mural.

187. By leveraging Greetings Tour's work, the Infringing AB TCP Big Easy Post has sought to entice travelers to visit New Orleans and stay at or purchase other services from the New Orleans Marriott Warehouse.

188. AB TCP Big Easy has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for AB TCP Big Easy.

189. AB TCP Big Easy Post has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from NOLA" mural.

190. By its actions alleged above, AB TCP Big Easy has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from NOLA" mural including by, among other things, copying, publicly displaying, and distributing the Infringing AB TCP Big Easy Post, which reproduces the "Greetings from NOLA" mural in order to enhance the New Orleans Marriott Warehouse's brand image and attract patrons to the hotel.

191. Greetings Tour has sustained significant injury and monetary damages as a result of AB TCP Big Easy's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

192. Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of AB TCP Big Easy's acts. In order to determine the full extent of such damages, including such profits of AB TCP Big Easy as may be recoverable, Greetings Tour will require an accounting from AB TCP Big Easy of all monies generated from its wrongful conduct.

193. On information and belief, AB TCP Big Easy's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

194. AB TCP Big Easy's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 7. Defendant Lodging Dynamics

195. On information and belief, Lodging Dynamics has owned, operated, and/or managed the Fairfield Inn & Suites Moab since at least 2022.

196. On information and belief, Marriott International has franchised the "Fairfield Inn & Suites" brand to Lodging Dynamics, which in turn has been allowed to own, operate, and/or manage the Fairfield Inn & Suites Moab.

197. On information and belief, Lodging Dynamics has used social media to advertise the hospitality services provided by Lodging Dynamics.

198. On information and belief, Lodging Dynamics has owned, operated, and/or managed a profile on Facebook for the Fairfield Inn & Suites Moab with the name "Fairfield Inn & Suites Moab."

199. The Fairfield Inn & Suites Moab's Facebook profile has been accessible on the internet to consumers, including California residents. Besides viewing posts on this profile, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the Fairfield Inn & Suites Moab's Facebook profile, consumers have also been able to access the Fairfield Inn & Suites Moab's website—a platform for reserving accommodations, dining, events, and other services at the Fairfield Inn & Suites Moab—as well as Marriott International's website.

200.   Lodging Dynamics posts advertisements for the Fairfield Inn & Suites Moab on the Fairfield Inn & Suites Moab's Facebook profile to solicit consumers, including on information and belief California residents, to purchase hospitality services from the Fairfield Inn & Suites Moab. On information and belief, the Fairfield Inn & Suites Moab's Facebook profile has a California user base from which Lodging Dynamics seeks to or does profit by selling such hospitality services.

201.   On April 9, 2022, and May 7, 2022, respectively, Lodging Dynamics made the following posts on the Fairfield Inn & Suites Moab's Facebook profile (the "Infringing Lodging Dynamics Posts"):



 **Fairfield Inn & Suites Moab** · Follow
Apr 9, 2022

Wish you were here. After a day of traversing the parks, find your fun in downtown Moab.
... See more

 5

23658394.1
229770-10016

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT



**Fairfield Inn & Suites Moab** · Follow
May 7, 2022

Friends that hike together, stay together for downtown Moab fun.

Photo: briannaleyden

203    4 comments  3 shares

202. The Infringing Lodging Dynamics Posts prominently display Greetings Tour's "Greetings from Moab" mural (Reg. No. VAu001368905):



203. Greetings Tour's prominence and its signature on the "Greetings from Moab" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, Lodging Dynamics had reason to know that the "Greetings from

Moab" mural was created by Greetings Tour, and Lodging Dynamics had access to Greetings Tour's original artwork and design before Lodging Dynamics commenced its acts of infringement.

204. Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, Lodging Dynamics was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing Lodging Dynamics Posts.

205. Yet, the Infringing Lodging Dynamics Posts were made without Greetings Tour's knowledge or permission. Lodging Dynamics failed to credit, mention, or tag Greetings Tour as the creator of the "Greetings from Moab" mural.

206. On information and belief, Lodging Dynamics' failure to credit Greetings Tour as the creator of the "Greetings from Moab" mural was done to conceal its infringement, since including Greetings Tour's signature or crediting Greetings Tour by tagging it in the subject posts would have alerted Greetings Tour to Lodging Dynamics' unauthorized commercial use of the mural.

207. By leveraging Greetings Tour's work, the Infringing Lodging Dynamics Posts have sought to entice travelers to visit Moab and stay at or purchase other services from the Fairfield Inn & Suites Moab.

208. Lodging Dynamics has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for Lodging Dynamics.

209. Lodging Dynamics has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from Moab" mural.

210. By its actions alleged above, Lodging Dynamics has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from Moab" mural including by, among other things, copying, publicly displaying, and distributing the Infringing Lodging Dynamics Posts,

which reproduce the "Greetings from Moab" mural in order to enhance the Fairfield Inn & Suites Moab's brand image and attract patrons to the hotel.

211.   Greetings Tour has sustained significant injury and monetary damages as a result of Lodging Dynamics' wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

212.   Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Lodging Dynamics' acts. In order to determine the full extent of such damages, including such profits of Lodging Dynamics as may be recoverable, Greetings Tour will require an accounting from Lodging Dynamics of all monies generated from its wrongful conduct.

213.   On information and belief, Lodging Dynamics' infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

214.   Lodging Dynamics' actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 8.  Defendant 127 PS Fee Owner

215.   On information and belief, 127 PS Fee Owner has owned, operated, and/or managed the Cleveland Marriott Downtown since at least 2017.

216.   On information and belief, Marriott International has franchised the "Marriott" brand to 127 PS Fee Owner, which in turn has been allowed to own, operate, and/or manage the Cleveland Marriott Downtown.

217.   On information and belief, 127 PS Fee Owner has used social media to advertise the hospitality services provided by 127 PS Fee Owner.

218. On information and belief, 127 PS Fee Owner has owned, operated, and/or managed a profile on Facebook for the Cleveland Marriott Downtown with the name "Cleveland Marriott Downtown at Key Tower."

219. The Cleveland Marriott Downtown's Facebook profile has been accessible on the internet to consumers, including California residents. Besides viewing posts on this profile, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the Cleveland Marriott Downtown's Facebook profile, consumers have also been able to access the Cleveland Marriott Downtown's website—a platform for reserving accommodations, dining, events, and other services at the Cleveland Marriott Downtown—as well as Marriott International's website.

220. 127 PS Fee Owner posts advertisements for the Cleveland Marriott Downtown on the Cleveland Marriott Downtown's Facebook profile to solicit consumers, including on information and belief California residents, to purchase hospitality services from the Cleveland Marriott Downtown. On information and belief, the Cleveland Marriott Downtown's Facebook profile has a California user base from which 127 PS Fee Owner seeks to or does profit by selling such hospitality services.

221. On June 12, 2017, 127 PS Fee Owner made the following post on the Cleveland Marriott Downtown's Facebook profile (the "Infringing 127 PS Fee Owner Post"):

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT



Cleveland Marriott Downtown at... · Follow
Jun 12, 2017

Thank you, Greetings Tour for this life-size postcard!
📷 @trevoar #cleiskey

💬 204                                          5 shares

222.   Greetings Tour did not learn of the Infringing 127 PS Fee Owner Post until approximately 2023. Further, Greetings Tour had no reasonable way of discovering the Infringing CW Hotel Post at the time it was posted, as Greetings Tour did not follow the Cleveland Marriott Downtown's social media profiles.

223.   The Infringing 127 PS Fee Owner Post prominently displays Greetings Tour's "Greetings from Cleveland" mural (Reg. No. V Au 1-257-759):



224.   Greetings Tour's prominence and its signature on the "Greetings from Cleveland" mural clearly establish Greetings Tour as the owner of the mural.

Accordingly, 127 PS Fee Owner had reason to know that the "Greetings from Cleveland" mural was created by Greetings Tour, and 127 PS Fee Owner had access to Greetings Tour's original artwork and design before 127 PS Fee Owner commenced its acts of infringement.

225. Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, 127 PS Fee Owner was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing 127 PS Fee Owner Post.

226. Yet, the Infringing 127 PS Fee Owner Post was made without Greetings Tour's knowledge or permission.

227. By leveraging Greetings Tour's work, the Infringing 127 PS Fee Owner Post has sought to entice travelers to visit Cleveland and stay at or purchase other services from the Cleveland Marriott Downtown.

228. 127 PS Fee Owner has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for 127 PS Fee Owner.

229. 127 PS Fee Owner has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from Cleveland" mural.

230. By its actions alleged above, 127 PS Fee Owner has infringed, and on information and belief will continue to infringe, upon Greetings Tour's copyrights in the "Greetings from Cleveland" mural including by, among other things, copying, publicly displaying, and distributing the Infringing 127 PS Fee Owner Post, which reproduces the "Greetings from Cleveland" mural in order to enhance the Cleveland Marriott Downtown's brand image and attract patrons to the hotel.

231. Greetings Tour has sustained significant injury and monetary damages as a result of 127 PS Fee Owner's wrongful acts as alleged in this Complaint,

including reputational damage and diminishment of the value of Greetings Tour's work.

232. Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of 127 PS Fee Owner's acts. In order to determine the full extent of such damages, including such profits of 127 PS Fee Owner as may be recoverable, Greetings Tour will require an accounting from 127 PS Fee Owner of all monies generated from its wrongful conduct.

233. On information and belief, 127 PS Fee Owner's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

234. 127 PS Fee Owner's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 9. The JW Marriott Tucson Starr Pass Hotel

235. On information and belief, the JW Marriott Tucson Starr Pass was owned by Starr Pass Resort Developments LLC ("Starr Pass Resort") from at least 2017 to 2019.

236. On information and belief, Marriott International franchised the "JW Marriott" brand to Starr Pass Resort. However, on information and belief, Marriott International, through its affiliates and/or subsidiaries, retained control of the operation and/or management of the JW Marriott Tucson Starr Pass at all relevant times. Further, Marriott International, through its affiliates and/or subsidiaries, retained the exclusive right to control the operation and/or management of the JW Marriott Tucson Starr Pass, including all matters connected to public relations and advertising.

237. On information and belief, the JW Marriott Tucson Starr Pass Hotel has used social media to advertise the hospitality services provided by Marriott International.

238. Further, on information and belief, Marriott International, its affiliates, and/or subsidiaries have owned, operated, and/or managed a profile on Facebook for the JW Marriott Tucson Starr Pass with the name "JW Marriott Tucson Starr Pass Resort & Spa."

239. The JW Marriott Tucson Starr Pass's Facebook profile has been accessible on the internet to consumers, including California residents. Besides viewing posts on this profile, consumers have been able to interact with such posts in numerous ways, including by sharing, reacting to (*e.g.*, "liking"), and commenting on them. Using hyperlinks on the JW Marriott Tucson Starr Pass's Facebook profile, consumers have also been able to access the JW Marriott Tucson Starr Pass's website—a platform for reserving accommodations, dining, events, and other services at the JW Marriott Tucson Starr Pass—as well as Marriott International's website.

240. Marriott International, its affiliates, and/or its subsidiaries post advertisements for the JW Marriott Tucson Starr Pass on the JW Marriott Tucson Starr Pass's Facebook profile to solicit consumers, including on information and belief California residents, to purchase hospitality services from the JW Marriott Tucson Starr Pass. On information and belief, the JW Marriott Tucson Starr Pass's Facebook profile has a California user base from which Marriott International seeks to or does profit by selling such hospitality services.

241. On March 31, 2017, the JW Marriott Tucson Starr Pass Facebook profile, as operated by Marriott International or its affiliates and/or subsidiaries, made the following post (the "Infringing Tucson Starr Pass Post"):



242. Greetings Tour did not learn of the Infringing Tucson Starr Pass Post until January 2023. Further, Greetings Tour had no reasonable way of discovering the Infringing Tucson Starr Pass Post at the time it was posted, as Greetings Tour did not follow the JW Marriott Tucson Starr Pass's Facebook account.

243. The Infringing Tucson Starr Pass Post prominently displays Greetings Tour's "Greetings from Tucson" mural (Reg. No. VAu001307692):



23658394.1
229770-10016

244. Greetings Tour's prominence and its signature on the "Greetings from Tucson" mural clearly establish Greetings Tour as the owner of the mural. Accordingly, Marriott International had reason to know that the "Greetings from Tucson" mural was created by Greetings Tour, and Marriott International had access to Greetings Tour's original artwork and design before it commenced its acts of infringement.

245. Upon information and belief, given Greetings Tour's signature on the mural and its prominence in the art and travel industries, Marriott International was actually or at least constructively aware that Greetings Tour was based in California before making the Infringing Tucson Starr Pass Post.

246. Yet, the Infringing Tucson Starr Pass Post was made without Greetings Tour's knowledge or permission.

247. By leveraging Greetings Tour's work, the Infringing Tucson Starr Pass Post has sought to entice travelers to visit Tucson and stay at or purchase other services from the JW Marriott Tucson Starr Pass.

248. Marriott International has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for Marriott International.

249. Marriott International has earned substantial additional revenues and indirect profits as a result of its use of the "Greetings from Tucson" mural.

250. By its actions alleged above, Marriott International has infringed and will continue to infringe upon Greetings Tour's copyrights in the "Greetings from Tucson" mural including by, among other things, copying, publicly displaying, and distributing the Infringing Tucson Starr Pass Post, which reproduces the "Greetings from Tucson" mural in order to enhance the JW Marriott Tucson Starr Pass's brand image and attract patrons to the hotel.

251.  Greetings Tour has sustained significant injury and monetary damages as a result of Marriott International's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

252.  Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Marriott International's acts. In order to determine the full extent of such damages, including such profits of Marriott International as may be recoverable, Greetings Tour will require an accounting from Marriott International of all monies generated from its wrongful conduct.

253.  On information and belief, Marriott International's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

254.  Marriott International's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

### 10. Defendant Marriott International

255.  On information and belief, in or about 2015, Marriott International launched the "M Live Program."

256.  On information and belief, through the M Live Program, Marriott International creates real-time content on social media and generates engagement with travelers in order to build interest in hotels operating under the Marriott Brands.

257.  On information and belief, the M Live Program allows Marriott International to interact with guests on social media platforms where travelers are already actively engaged.

258.   On information and belief, Marriott International tracks conversations, trends, global performance, marketing campaigns, and brand reputation across social media platforms, identifying opportunities for Marriott International to engage consumers with its Marriott Brands and nearly 4,500 properties.

259.   On information and belief, Marriott International identifies popular works on social media, including the Murals, and leverages them to promote the Marriott Brands through the Marriott Associated Entities.

260.   On information and belief, Marriott International utilizes the M Live Program to guide and assist the Marriott Associated Entities' use of social media.

261.   Indeed, due to Marriott International's social media programs and guidelines, there has been a consistent pattern of Marriott Associated Entities using the Murals without crediting, obtaining permission from, or compensating Greetings Tour.

262.   Further, on information and belief, Marriott International offers management services to certain Marriott Associated Entities.

263.   For example, on information and belief, while Starr Pass Resort owns the JW Marriott Tucson Starr Pass, Marriott International manages all operations, including advertising and social media, for the JW Marriott Tucson Starr Pass.

264.   On information and belief, Marriott International directly participated in the creation and/or approval of the Infringing Tucson Starr Pass Post.

265.   On information and belief, Marriott International directly participated in the creation and/or approval of any Infringing Work made by a Marriott Associated Entity managed by Marriott International.

266.   Further, on information and belief, Marriott International retains certain rights as the owner of the Marriott Brands, including the right to approve all marketing and advertising done by the Marriott Associated Entities.

23658394.1
229770-10016

267.  On information and belief, Marriott International requires that the Marriott Associated Entities (1) conform to certain guidelines for advertising activity, or (2) provide samples of any advertisements to Marriott International for approval.

268.  Further, upon information and belief, Marriott International reserves the right to use any advertising, marketing, or sales concepts, programs, or materials developed by the Marriott Associated Entities.

269.  On information and belief, as the franchisor, Marriott International either explicitly approved the Infringing Works as advertisements for the Marriott Associated Entities, or provided advertising guidelines that encouraged the Marriott Associated Entities' use of copyrighted works such as the Murals.

270.  Each of the Infringing Works is an advertisement meant to promote the hospitality services provided by the Marriott Associated Entities operating in the same area as the featured mural (or, in the case of the Infringing Tucson Starr Pass Post, by Marriott International directly). By leveraging Greetings Tour's work, the Infringing Works entice travelers to visit the local communities depicted therein, and stay at or purchase other services from the hotels owned, operated, and/or managed by the Marriott Associated Entities (or, in the case of the JW Marriott Tucson Starr Pass, by Marriott International directly).

271.  Locations franchised by Marriott International have previously reached out to Greetings Tour in order to commission and license its artwork. Further, Greetings Tour's fame and its signature on each of the Murals clearly establish Greetings Tour as the owner of each of the Murals. Marriott International had reason to know that the Murals were created by Greetings Tour. Yet, all the Infringing Works were made without Greetings Tour's knowledge or permission.

272. Marriott International has benefitted from its misappropriation and infringement in a number of ways, including but not limited to increased revenue, sales, profits, patronage, and brand value for Marriott International.

273. Marriott International has earned substantial additional revenues and indirect profits as a result of its use of the Murals.

274. Greetings Tour has sustained significant injury and monetary damages as a result of Marriott International's wrongful acts as alleged in this Complaint, including reputational damage and diminishment of the value of Greetings Tour's work.

275. Greetings Tour is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Marriott International's acts. In order to determine the full extent of such damages, including such profits of Marriott International as may be recoverable, Greetings Tour will require an accounting from Marriott International of all monies generated from its wrongful conduct.

276. On information and belief, Marriott International's infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

277. Marriott International's actions have caused and will continue to cause damage and irreparable harm to Greetings Tour and are likely to continue unabated, thereby causing further damage and irreparable harm to Greetings Tour, unless preliminarily and permanently enjoined by the Court.

# COUNT I:

## DIRECT COPYRIGHT INFRINGEMENT

## (17 U.S.C. § 101 ET SEQ.)

## (AGAINST ALL DEFENDANTS)

278. Greetings Tour incorporates and realleges Paragraphs 1 through 277 of this Complaint as if fully set forth herein.

279. The Murals, as shown in Exhibit A, are original works of authorship and constitute copyrightable subject matter under the laws of the United States.

280. The Murals are registered with the United States Copyright Office. *See* Exhibit A.

281. Fung and Beggs have assigned all right, title and interest in and to the copyrights mentioned above to Greetings Tour.

282. At all times since the creation of the Murals, Greetings Tour (and Fung and Beggs before it) has complied with all aspects of the Copyright Acts of 1909 and 1976 and all other laws governing copyright, and secured the exclusive rights and privileges in and to graphic expression. Greetings Tour is the sole owner of all rights, title, and interest in and to the copyrights in the Murals.

283. By their actions alleged above, Defendants have infringed and will continue to infringe upon Greetings Tour's copyrights in the Murals including by, among other things, copying, publicly displaying, and distributing the Infringing Works in order to enhance their brand image and attract patrons to their hotels.

284. As alleged herein, Defendants had access to Greetings Tour's original artwork and design before Defendants commenced their acts of infringement.

285. All of Defendants' acts were performed without the permission, license or consent of Greetings Tour.

286. On information and belief, Defendants' infringement of Greetings Tour's copyrights has been deliberate, willful, and in utter disregard of Greetings Tour's rights.

287. By reason of Defendants' acts of copyright infringement as alleged herein, Greetings Tour has suffered and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, and a diminishment in the value of its works, rights, and reputation, in part as described above, all in amounts that are not ascertainable but not less than the jurisdictional minimum of this Court. As a result of Defendants' misconduct as alleged herein, Greetings Tour's reputation and career have been irreparably tarnished, diminishing the value of Greetings Tour's works and decreasing the revenue derived from its work.

288. Further, Greetings Tour has frequently collaborated with businesses in the travel and hotel industry. Defendants' actions have set a dangerous precedent of businesses using Greetings Tour's work without permission or accreditation.

289. By reason of their infringement of Greetings Tour's copyrights as alleged herein, Defendants are liable to Greetings Tour for the actual damages incurred by Greetings Tour as a result of the infringement, and for disgorgement of Defendants' profits directly or indirectly attributable to such infringement.

290. Greetings Tour is also entitled to recover from Defendants statutory damages and attorneys' fees for Defendants' willful infringement of its copyrights. Greetings Tour is further entitled to an injunction restraining Defendants, their agents and employees, and all persons acting in concert or participation with Defendants from engaging in any further such acts in violation of the Copyright Act.

# COUNT II:

# CONTRIBUTORY COPYRIGHT INFRINGEMENT

# (AGAINST MARRIOTT INTERNATIONAL)

291. Greetings Tour incorporates and realleges Paragraphs 1 through 277 of this Complaint as if fully set forth herein.

292. On information and belief, Marriott International worked with the Marriott Associated Entities to design, approve, and distribute the Infringing Works.

293. On information and belief, Marriott International permitted, encouraged, and allowed the Marriott Associated Entities to distribute the Infringing Works without regard to copyright ownership.

294. On information and belief, Marriott International had the obligation and ability to control and stop the infringing activity, yet failed to do so. Rather, it assisted in the infringement and continues to profit from it.

295. Marriott International's conduct constitutes contributory copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

296. By reason of Marriott International's acts of copyright infringement as alleged herein, Greetings Tour has suffered and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, and a diminishment in the value of its works, rights, and reputation, in part as described above, all in amounts that are not ascertainable but not less than the jurisdictional minimum of this Court. As a result of Marriott International's misconduct as alleged herein, Greetings Tour's reputation and career have been irreparably tarnished, diminishing the value of Greetings Tour's works and decreasing the revenue derived from its work.

297. Further, Greetings Tour has frequently collaborated with businesses in the travel and hotel industry. Marriott International's actions have set a dangerous precedent of businesses using Greetings Tour's work without permission or accreditation.

298. By reason of its infringement of Greetings Tour's copyrights as alleged herein, Marriott International is liable to Greetings Tour for the actual damages incurred by Greetings Tour as a result of the infringement, and for disgorgement of Marriott International's profits directly or indirectly attributable to such infringement.

299. Greetings Tour is also entitled to recover from Marriott International statutory damages and attorneys' fees for Marriott International's willful infringement of Greetings Tour's copyrights. Greetings Tour is further entitled to an injunction restraining Marriott International, its agents and employees, and all persons acting in concert or participation with it from engaging in any further such acts in violation of the Copyright Act.

## COUNT III:

## VICARIOUS COPYRIGHT INFRINGEMENT
## (AGAINST MARRIOTT INTERNATIONAL)

300. Greetings Tour incorporates and realleges Paragraphs 1 through 277 of this Complaint as if fully set forth herein.

301. On information and belief, Marriott International collaborated on the design and distribution of the Infringing Works in an effort to lure customers to its hotel locations.

302. On information and belief, Marriott International received direct financial benefits from the infringement through profits, gains, and advantages by having initially attracted and secured consumers through its acts of infringement.

303.   On information and belief, Marriott International is the owner and franchisor of the Marriott Brands.

304.   On information and belief, Marriott International has the right and ability to supervise, control, and/or otherwise restrict the Marriott Associated Entities from releasing advertisements that infringe upon the intellectual property of others.

305.   On information and belief, Marriott International has failed to adequately police the Marriott Associated Entities with respect to engaging in infringing conduct. Rather, Marriott International has encouraged the distribution of the Infringing Works to its own benefit.

306.   Marriott International's conduct constitutes vicarious copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

307.   By reason of Marriott International's acts of copyright infringement as alleged herein, Greetings Tour has suffered and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, and a diminishment in the value of its works, rights, and reputation, in part as described above, all in amounts that are not ascertainable but not less than the jurisdictional minimum of this Court. As a result of Marriott International's misconduct as alleged herein, Greetings Tour's reputation and career have been irreparably tarnished, diminishing the value of Greetings Tour's works and decreasing the revenue derived from its work.

308.   Further, Greetings Tour has frequently collaborated with businesses in the travel and hotel industry. Marriott International's actions have set a dangerous precedent of businesses using Greetings Tour's work without permission or accreditation.

309.   By reason of its infringement of Greetings Tour's copyrights as alleged herein, Marriott International is liable to Greetings Tour for the actual

23658394.1
229770-10016

damages incurred by Greetings Tour as a result of the infringement, and for disgorgement of Marriott International's profits directly or indirectly attributable to such infringement.

310. Greetings Tour is also entitled to recover from Marriott International statutory damages and attorneys' fees for Marriott International's willful infringement of Greetings Tour's copyrights. Greetings Tour is further entitled to an injunction restraining Marriott International, its agents and employees, and all persons acting in concert or participation with it from engaging in any further such acts in violation of the Copyright Act.

**COUNT IV:**

**REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT (17 U.S.C. 1202(b)) (AGAINST SEATTLE UNION, HMC, TURNBERRY, CW HOTEL, AND AB TCP BIG EASY)**

311. Greetings Tour incorporates and realleges Paragraphs 1-102, 127-194 of this Complaint as if fully set forth herein.

312. The Murals contain copyright management information protected under 17 U.S.C. Section 1202(b), including Greetings Tour's signature "@greetingstour."

313. Defendants Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy intentionally removed copyright management information from images of Murals in their respective infringing social media posts, in that those images were cropped, or taken from an angle that rendered Greetings Tour's signature not visible.

314. Such conduct by Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy constitutes a violation of 17 U.S.C. Section 1202(b).

315. Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy's removal of copyright management information was done without Greetings Tour's knowledge or authorization.

316. On information and belief, Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy's removal of copyright management information was done intentionally, knowingly, and with the intent to conceal their infringement of Greetings Tour's copyrights in the Murals.

317. Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy also knew, or had reason to know, that such removal of copyright management information would conceal their infringement of Greetings Tour's copyrights in the Murals. Lacking any way to know Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy's states of mind, Greetings Tour pleads their intent/knowledge on information and belief. The basis for such information and belief is an inference from the nature of Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy's copying: a plausible explanation for their choice to omit Greetings Tour's signature from their use of the Murals is that they intended to obscure Greetings Tour's name in order to make it less likely that Greetings Tour would learn of their infringement.

318. Greetings Tour has sustained significant injury and monetary damages as a result of Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy's wrongful acts as herein alleged. Greetings Tour is at present unable to ascertain the full extent of the monetary damages that it has suffered by reason of said acts. In order to determine the full extent of such damages, including such profits of Seattle Union, HMC, Turnberry, CW Hotel, and AB TCP Big Easy as may be recoverable under 17 U.S.C. Section 1203, Greetings Tour requires an accounting from each of them of all monies generated from their wrongful falsification, alteration, and removal of Greetings Tour's copyright management information.

# PRAYER FOR RELIEF

WHEREFORE, Greetings Tour respectfully requests that the Court enter a judgment against Defendants as follows:

1. For a declaration that Defendants have infringed upon Greetings Tour's copyrights in the Murals;

2. For a declaration that the foregoing acts of infringement were willful;

3. For a declaration that Defendants must render a full and complete accounting to Greetings Tour for Defendants' profits, gains, and advantages, or the value of business opportunities received, from the foregoing acts of infringement;

4. For an award of all damages suffered by Greetings Tour and for any profit or gain by Defendants attributable to their infringement of Greetings Tour's copyrights in amounts to be determined at trial;

5. For an award of statutory damages to Greetings Tour based upon Defendants' willful acts of infringement pursuant to Copyright Laws, 17 U.S.C. § 101 *et seq.*;

6. For an award of Greetings Tour's costs, attorneys' fees and expenses in this action;

7. For an award of pre-judgement interest;

8. For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and any and all persons in active consent or participation with any of them, from engaging in the misconduct referenced herein;

9. For an order that Defendants be ordered to immediately recall and remove any and all infringing materials; and,

10. For further relief, as the Court may deem appropriate.

23658394.1
229770-10016

Dated: September 1, 2023            Respectfully submitted,


                                    */s/ Vivek Jayaram*
                                    VIVEK JAYARAM (Pro Hac Vice)
                                    PALAK V. PATEL (Pro Hac Vice)
                                    vivek@jayaramlaw.com
                                    palak@jayaramlaw.com
                                    JAYARAM LAW
                                    54 W. 21st Street
                                    New York, NY 10010
                                    Telephone: 312.212.8676

                                    ALEXANDER M. KARGHER (SBN 259262)
                                    akargher@sinclairbraun.com
                                    SINCLAIR BRAUN KARGHER LLP
                                    15260 Ventura Blvd., Suite 715
                                    Sherman Oaks, CA 91403
                                    Telephone: 213.429.6100

                                    *Attorneys for Plaintiff*
                                    GREETINGS TOUR INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2023, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which automatically provides notice to all CM/ECF Users and counsel of record who have appeared in this case.

_/s/ *Vivek Jayaram*_____
Vivek Jayaram

23658394.1
229770-10016

PLAINTIFF GREETINGS TOUR INC.'S
FOURTH AMENDED COMPLAINT